UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Allure Jewelers, Inc.,

       Plaintiff,

       v.                               Case No. 1:12cv91

Mustafa Ulu, *et al.*,                    Judge Michael R. Barrett

       Defendants.

## OPINION & ORDER

This matter is before the Court upon Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.  (Doc. 2.)  A telephonic hearing was held on Plaintiff's Motion on February 2, 2012.  During the hearing, Plaintiff explained that at this time, it was only seeking temporary injunctive relief against Defendants Mustafa Ulu, Goldia.com, and Quality Gold.

## I.     BACKGROUND

According to the Complaint filed in this matter, Plaintiff is an internet provider of fine jewelry items and gold items.  (Doc. 1, ¶ 13.)  Plaintiff acquires some of its products from Defendant Quality Gold, and sells these products through eBay.com, Amazon.com and its own website.  (Id., ¶ 14.)

In connection with its website, Plaintiff claims that it has spent time and expense in developing custom database programs, pricing algorithms, templates, style sheets, data, HTML coding, graphic presentation, website themes, and key search words.  (Id., ¶ 17.) Plaintiff also claims that it spends a considerable amount of time in providing the details

of its marketed products, including the type of metal, metal purity, actual length, actual width, weight, style, finish and features.  (Id., ¶ 19.)

Defendants Mustafa Ulu and Goldia.com also purchase products from Quality Gold. (Id. ¶ 15.)  Plaintiff claims that Ulu and Goldia.com have improperly "scraped" or copied information about these products from Plaintiff's website for use on Goldia.com, eBay.com and Amazon.com.  (Id., at ¶¶ 21, 23, 25.)  Plaintiff also claims that Ulu and Goldia.com have unfairly priced their products at a slightly lower cost by using a computer program to calculate 98% of Plaintiff's advertised price.   (Id., ¶ 24; Doc. 1-2, Affidavit of Barry Anderson, ¶ 18.)

Plaintiff has provided three examples of instances where Plaintiff and Ulu and Goldia.com are selling the same product, and the listing for the product by Ulu and Goldia.com contains information from Plaintiff's product listing.  (Doc. 1-2, Anderson Aff., Exs. 1-8.)  In comparing these listings, the Court notes that there are some similarities between the list of qualities of the product, such as metal, metal purity, actual length, and features.  However, one would expect such similarities where the products are the same. The Court also notes that where a narrative description of the product is provided, that description is identical on Plaintiff's website and Goldia.com.  For instance, Plaintiff's website describes its 3/4-inch hoop earrings as follows:

> You will Love this pair of 14k Solid Gold Tube Hoop Earrings.  Our Beautiful Hoop Earings are perfect for every occasion and will give you an elegant look that you will want to show off.  You can experience pure beauty with this pair of hoop earrings with out No Risk 5-Star Satisfaction Guarantee today!

(Id., Ex. 1.) Goldia.com provides the following description for what appears to be the same earrings:

You will Love this pair of 14k Solid Gold Tube Hoop Earrings.  Our Beautiful Hoop Earings are perfect for every occasion and will give you an elegant look that you will want to show off.  You can experience pure beauty with this pair of hoop earrings with out No Risk 5-Star Satisfaction Guarantee today!

(Id., Ex. 2.)[1]

Plaintiff brings the following claims: declaratory judgment, conversion, misappropriation of trade secrets under the Ohio Trade Secrets Act, unfair competition, harm to its business reputation, and injunctive relief.  Plaintiff seeks to enjoin Ulu and Goldia.Com from (1) advertising or selling any products in which they have illegally acquired data from Plaintiff, under either the Goldia name, or any other entity or partnership; and (2) selling any of the products in which Goldia has infringed upon, under either the Goldia name or any other entity or partnership.  (See Doc. 6.)  Plaintiff seeks to enjoin Defendant Quality Gold from selling any products to Ulu and Goldia.Com.  (Id.)

## II.    ANALYSIS

### A.    Motion for Temporary Restraining Order

Under Federal Rule of Civil Procedure 65(b), a court may issue a temporary restraining order if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  In determining whether a grant of a temporary restraining order or a preliminary injunction is appropriate under Rule 65, a court should consider "(1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting

---

[1]The Court also notes that the photo of the products is identical.  However, during the hearing, the parties explained that the photos were created by Quality Gold.  Plaintiff has not made any claim with regard to the photos.

the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction." *Jones v. Caruso*, 569 F.3d 238, 254 (6th Cir. 2009) (citing Six Clinics Holding Corp., II v. Cafcomp Sys., Inc., 119 F.3d 393, 399 (6th Cir. 1997)).  "These factors are not prerequisites, but are factors that are to be balanced against each other."  *Caruso*, 569 F.3d at 265 (citing Overstreet v. Lexington–Fayette Urban County Gov't, 305 F.3d 566, 573 (6th Cir. 2002)).

### B.      Likelihood of Success on the Merits

Much of the discussion during the telephone hearing on Plaintiff's Motion centered on claims Plaintiff may have under copyright law.  However, Plaintiff has not brought a copyright claim in the Complaint.  To sustain a case of copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying [by the defendants] of constituent elements of the work that are original."  *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995), *quoting Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Plaintiff has not alleged or presented any evidence that it owns a valid copyright in any portion of its website or the information it uses to market its products on other websites, such as eBay.com or Amazon.com.  Therefore, at this stage in the proceedings, the Court concludes that there is no likelihood that Plaintiff would succeed on a copyright claim based on the allegations in the Complaint.[2]

---

[2]During the hearing, Defendants questioned whether Plaintiff's descriptions of its products meet the "minimum degree of creativity" necessary for copyright protection.  The Supreme Court has explained that raw facts are not copyrightable, but choices relating to the selection and arrangement of facts in a compilation can qualify for copyright protection "so long as [these choices] are made independently by the compiler and entail a minimum degree of creativity. . . ."*Feist*, 499 U.S. at 348.  Based on the record before it, the Court is not able to

Defendants argue that Plaintiff cannot succeed on its claim pursuant to the Ohio

Trade Secrets Act because the information on its website are not protected trade secrets.

A trade secret is defined in the Act itself:

> (D)"Trade secret" means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
>> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>>
>> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code § 1333.61(D).  The Ohio Supreme Court has adopted the following factors

in analyzing a trade secret claim:

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, *i.e.*, by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*State ex rel. Besser v. Ohio State Univ.*, 732 N.E.2d 373, 377-78 (Ohio 2000), *quoting*

*State ex rel. The Plain Dealer v. Ohio Dept. of Ins.*, 687 N.E.2d 661, 672 (Ohio 1997).

---

determine whether copyright protection extends to the list of properties compiled by Plaintiff for each of its products.  In addition, while the paragraph descriptions which appear on Plaintiff's website and Goldia.com are identical, there is no evidence in the record at this time which explains the source of these paragraphs.  The Court is left to speculate whether the paragraphs were created by Plaintiff, or, like the photographs, were created by Quality Gold.

Absent from the Complaint is any allegation that Plaintiff made efforts to guard the secrecy of the information about its products.  Instead, it appears from the limited record before the Court that Plaintiff has published this information on the Internet.  Under these circumstances, the Court finds that Plaintiff has little likelihood of success on the merits of its Ohio Trade Secrets Act claim.

Defendants claim that Plaintiff's claim for unfair competition is preempted.  To the extent that Plaintiff's claim is based upon the misappropriation of confidential information, that claim is preempted by the Ohio Trade Secrets Act.  *See Kendall Holdings, Ltd. v. Eden Cryogenics*, 2012 WL 125177 *13 (S.D. Ohio Jan. 17, 2012).  To the extent that Plaintiff's claim is based upon Ulu and Goldia.com setting its prices lower than Plaintiff, the Complaint fails to adequately identify how this pricing is unfair competition, versus mere competition.[3]  There is no allegation or evidence that the pricing information was confidential.  In fact, Plaintiff alleges that Ulu and Goldia.com calculated its prices based on the prices on Plaintiff's publicly available website.  Therefore, the Court finds that Plaintiff has little likelihood of success on the merits of this claim.

Finally, under Ohio law, "[c]onversion is a wrongful exercise of dominion over property in exclusion of the right of the owner or withholding it from his possession under a claim inconsistent with his rights."  *Zacchini v. Scripps–Howard Broadcasting Co.*, 351 N.E.2d 454, 456 (Ohio 1976).  Ohio courts originally held that "only tangible chattels could be converted."  *Id.* at 456-57.  However, conversion claims have been extended to cover

---

[3]In addition, the Court notes that to the extent that Plaintiff's claim is based upon alleged copying of its information, Plaintiff's unfair competition claim would be preempted by 17 U.S.C. § 301(a).  *See Curcio Webb LLC, v. National Benefit Programs Agency, Inc.*, 367 F.Supp.2d 1191, 1213 (S.D.Ohio 2005).

"intangible rights which are customarily merged in or identified with some document[,]" such as "drafts, bank passbooks, and deeds."  *Id.* at 457.  Nevertheless, a plaintiff cannot recover for the tort of conversion if the subject of the conversion was a non-tangible idea. *Joyce v. General Motors Corp.*, 49 Ohio St.3d 93, 96 (1990) ("It is thus generally agreed that ideas are not the property of anyone unless expressed in a legally protected manner.") (citing Lear v. Adkins, 395 U.S. 653, 668 (1969)).  As currently plead, Plaintiff only identifies intangible chattels in the form of ideas which it claims have been converted by Ulu and Goldia.com.  Therefore, the Court finds that Plaintiff has little likelihood of success on the merits of its conversion claim.

In summary, the Court finds that at this stage of the proceedings, Plaintiff has demonstrated little to no likelihood of success on the merits of its claims.  *See Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (explaining that if "there is simply no likelihood of success on the merits" that is usually "fatal" to a request for injunctive relief).  Therefore, this factor weighs against the granting of a TRO.

### C.    Irreparable harm

"A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages."  *Overstreet*, 305 F.3d at 578.  Plaintiff has not specifically articulated how it will be irreparably harmed if the Court denies injunctive relief at this time.

The Court notes that the loss of trade secrets is usually considered an irreparable harm that cannot be measured in money damages, and therefore, where it is shown that the defendant has misappropriated the plaintiff's trade secrets, irreparable harm is

generally presumed.  *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F.Supp.2d 853, 867 (S.D.Ohio 2008).  However, where a plaintiff has not established a strong likelihood of success on the merits on its misappropriation of trade secrets claim, the presumption is not applicable.  *Id.*

Similarly,  irreparable harm results from "the loss of customer goodwill . . . because the damages flowing from such losses are difficult to compute."  *Certified Restoration Dry Cleaning Network, L.L. C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007).  However, other than simply alleging damage to its business reputation, Plaintiff has not demonstrated how it will suffer such damage.

In summary, the Court finds that Plaintiff has not adequately shown irreparable harm to warrant the granting of injunctive relief.

## D.    Harm to Third Parties

Plaintiff has not explained how this factor weighs in its favor.  As this Court has previously explained: "The purpose of interlocutory injunctive relief is to preserve the status quo pending final relief and to prevent irreparable injury to the plaintiff-not simply to punish past misdeeds or set an example."  *Cincinnati Indus. Machinery, Inc. v. VMI Holland BV*, 2010 WL 597820, *13 (S.D.Ohio Feb. 17, 2010) (citing Tenneco Automotive Operating Co. Inc. v. Kingdom, 2008 WL 4388899 (E.D.Mich. Sept. 25, 2008)).  It appears in this case, granting injunctive relief would alter the status quo and cause harm to the customers of all the Defendant.

## E.    Public Interest

The public has an interest in discouraging unfair trade practices.  *Hoover Transp.*

*Servs., Inc. v. Frye*, 77 Fed. App'x 776, 785 (6th Cir. 2003).  However, because Plaintiff has failed to demonstrate a likelihood of success on its claims, the Court finds that the public interest in encouraging competition weighs against granting injunctive relief.  *Accord Novak v. Farneman*, 2010 WL 4643002 *7 (S.D.Ohio Nov. 9, 2010).

## III.  CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Plaintiff's Motion for Temporary Restraining Order (Doc. 2) is **DENIED**.

**IT IS SO ORDERED.**

                     */s/ Michael R. Barrett*
                     Michael R. Barrett, Judge
                     United States District Court